USCA1 Opinion

 

 December 28, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1609 JAIME DELGADO, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, and ____________________ Stahl, Circuit Judge. _____________ ____________________ Fabio A. Roman Garcia on brief for appellant. _____________________ Guillermo Gil, United States Attorney, Maria Hortensia Rios, _____________ ______________________ Assistant United States Attorney, and Robert M. Peckrill, Assistant ___________________ Regional Counsel, Department of Health & Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Plaintiff-appellant Jamie Delgado appeals __________ from a district court judgment affirming the decision of the Secretary of Health and Human Services denying his application for disability insurance benefits. For the reasons that follow, we vacate the judgment below and remand the case. I. Delgado was born on June 13, 1944. He completed approximately three years of school, but cannot read or write. For approximately twenty-five years, Delgado worked at La Estrella bakery, gradually progressing to the jobs of baker and confectioner. In 1986, he stopped working when the owner of the bakery died and the bakery shut down. Thereafter, he worked for a few weeks at another bakery, but was dismissed because his "[right] foot got swollen, and [he] missed work . . . " He has not worked since then, and he alleges a disability onset date of December 30, 1986. Delgado was insured through December 31, 1991. On September 21, 1989, Delgado filed an application for benefits alleging that he is disabled due to a right leg injury. In a subsequently filed disability report, Delgado alleged that after breaking his ankle on February 2, 1984, he could no longer work full days at the bakery. He complained that eventually he had to stop working entirely because his leg swells when he stands up for long periods of time. He -3- also complained that since the accident, he has experienced pain and numbness in his right hand. The Social Security Administration denied Delgado's application initially and on reconsideration. On October 5, 1990, Delgado obtained a hearing before an Administrative Law Judge (ALJ). Delgado and a medical expert testified. On October 24, 1990, the ALJ determined that Delgado is not disabled. The Appeals Council, however, accepted review and remanded the case to the ALJ for further proceedings. A second hearing, held on October 22, 1991, included the testimony of a vocational expert. Delgado was represented by counsel at both hearings. The medical record before the ALJ is well-summarized in his reports. Briefly, Delgado suffered a crush injury to his right hand, in 1969, which resulted in some loss of motion. On February 9, 1984, Delgado slipped at work, suffered an undisplaced spiral fracture in his right ankle, and was treated at El Buen Hospital under the auspices of the State Insurance Fund. Records from the Fund disclose that on January 19, 1990, Delgado was examined by a peripherovascular surgeon in connection with complaints of pain and swelling in his right ankle. The examination revealed a well-oriented, middle-aged man, in no acute distress, and without significant edema. -4- On November 13, 1989, Delgado was seen by Dr. Paul Kindy, a consultative orthopedic physician. He noted that Delgado complained of pain and swelling in the right ankle, pain in both knees, and weakness and pain in the right hand. The examination revealed some loss of motion in the right wrist and thumb, as well as in the right ankle. Both knees had a full range of motion and good strength. Delgado's ability to squat, however, was limited to fifty percent of normal due to ankle and knee pain. The consulting physician diagnosed a crush injury deformity of the right hand with partial wrist and thumb motion loss; a healed fracture in the right ankle with partial loss of motion and weakness; and paint and crepitus (a crackling sound) in both knees.1 Delgado testified that if he stands up for a few hours, he experiences pain and swelling in his right ankle and leg, as well as in both knees. The swelling is alleviated if he lies down. Although the pain in his leg is "terrible," he obtains some relief when he lies down. He also takes Tylenol or Panadol to relieve the pain. He can walk for up to one- half hour and can sit for up to an hour and a half. During the day, he walks to the park, talks to neighbors, and  ____________________ 1. The record also contains two assessments of Delgado's residual functional capacity prepared by non-examining medical consultants. These consultants concluded that Delgado has manipulative and postural limitations, but can lift or carry fifty pounds occasionally and twenty-five pounds frequently, can stand or walk about six hours in a workday, and can sit about six hours in a workday. -5- watches television or listens to the radio. Delgado testified that he sometimes does chores such as washing windows or weeding, but that he is bothered by pain and swelling in his legs the next day. The medical expert (ME) opined that Delgado's condition does not meet or equal any of the listed impairments. The ME testified, however, that Delgado needs to alternate positions and that his hand injury limits his ability to perform fine manipulative activities, such as jewelry work. Based on Delgado's subjective allegations of knee pain, the ME further testified that Delgado is limited to lifting or carrying twenty pounds. The ME also observed that the medications Delgado testified he takes to relieve pain are for light to moderate pain. The Vocational Expert (VE) identified various jobs which Delgado could perform in the clothing and pharmaceutical industries, including spot cleaner, garment bagger, garment inspector, bottle washer, and box assembler. According to the VE, these jobs are light or sedentary work, do not require fine manipulative ability, and permit alternation of positions at will. The VE also testified that mild to moderate pain would not interfere with Delgado's ability to perform these jobs. Following the second hearing, the ALJ again determined that Delgado is not disabled. The ALJ found that Delgado's -6- musculoskeletal condition is severe and that he is unable to perform his past work. However, the ALJ concluded that Delgado has the residual functional capacity to perform the full range of light or sedentary work, reduced by limitation of motion of the right hand or wrist. The ALJ further concluded that Delgado's complaint of pain is not credible to the degree of severity alleged. Finally, the ALJ ruled that, based on the testimony of the vocational expert and application of the Grid, Delgado is not disabled at step five of the sequential analysis because there are other jobs that he can perform. The Appeals Council denied review on September 23, 1992. Delgado appealed to the district court and requested a remand to the Secretary for the taking of new evidence pursuant to 42 U.S.C. 405(g). The additional evidence proffered to the district court discloses that after the ALJ's determination of no disability, Delgado was diagnosed as suffering from rheumatoid arthritis in his hands, hips, knees, ankles, and feet. Dr. Jose Castro-Rodriguez, who saw Delgado between February 12, 1992 and April 29, 1992, treated Delgado with anti-inflammatory drugs. Dr. Roberto Rivera-Rivera, who treated Delgado between May 13, 1992 and September 9, 1992, also employed drug therapy, but noted poor response. On September 23, 1992, Delgado was seen by an orthopedic surgeon, Dr. Juan J. Bibiloni-Rodriguez. In a letter dated -7- November 12, 1992, Dr. Bibiloni-Rodriguez reported that Delgado's knees, hips, and right ankle required surgical intervention. Dr. Bibiloni-Rodriguez also opined that Delgado was totally disabled. Hospital records, as well as the surgeon's progress notes, reveal that Delgado underwent a left total knee replacement on or about November 9, 1992. Delgado's prognosis upon leaving the hospital was good. On February 11, 1993, Delgado underwent a right total knee replacement. The district court affirmed the Secretary's decision. This appeal followed. II. Delgado raises two arguments. First, he contends that the Secretary failed to adequately develop the record by ordering tests which would determine the cause of his knee complaints. Second, he argues that the district court erred in failing to remand the case in light of the proffered new evidence. Because we are persuaded that a remand was required for consideration of the proffered evidence, we need not address the first issue. The controlling statute provides that the court "may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a -8- prior proceeding . . . " 42 U.S.C. 405(g). A remand is appropriate when "further evidence is necessary to develop the facts of the case fully . . . and consideration of it is essential to a fair hearing." Evangelista v. Secretary of ___________ _____________ Health & Human Services, 826 F.2d 136, 139 (1st Cir. 1987). _______________________ We have clarified that a remand is indicated when, "were the proposed new evidence to be considered, the Secretary's decision `might reasonably have been different.'" Id. at 140 __ (quoting Falu v. Secretary of Health & Human Services, 703 ____ ______________________________________ F.2d 24, 27 (1st Cir. 1983)). The additional evidence is plainly new. The ALJ did not have before him evidence that Delgado was suffering from rheumatoid arthritis, much less that his condition required surgical intervention. We also find that the "good cause" requirement is met because the evidence was unavailable to incorporate into the administrative proceedings. See Wilson ___ ______ v. Secretary of Health & Human Services, 733 F.2d 1181, 1182 ____________________________________ (6th Cir. 1984); Bilodeau v. Shalala, 856 F. Supp. 18, 20-21 ________ _______ (D. Mass. 1994). Finally, we are persuaded that the proffered evidence is material. The diagnosis of rheumatoid arthritis, as well as evidence that Delgado's condition degenerated to the extent of requiring surgery, shed new light on the symptoms Delgado alleged and the seriousness of his condition as it existed at the time the ALJ made his determination. See Lisa v. ___ ____ -9- Secretary of Health & Human Services, 940 F.2d 40, 44-45 (2d _____________________________________ Cir. 1991) (evidence that claimant suffered from fibromyalgia, a rheumatic disease, was material because it suggested that claimant had an impairment substantially more severe than previously diagnosed). Most notably, a significant part of Delgado's claimed disability consisted of his complaint of "terrible" pain. The ALJ concluded that this complaint was not fully credible because, among other reasons, it was not supported by the evidence of record. The new evidence may alter this conclusion. See Geigle v. ___ ______ Sullivan, 961 F.2d 1395, 1397 (8th Cir. 1992) (MRI test ________ result, which showed that claimant had herniated disc, was material because it provided objective medical support for claimant's subjective complaints); Borders v. Heckler, 777 _______ _______ F.2d 954, 955-56 (4th Cir. 1985) (evidence of post-hearing operation on claimant's back relevant to question whether back condition was disabling, as well as supportive of subjective claim of disabling pain). We conclude that the proffered records must be presented to the Secretary to afford her the opportunity to reassess Delgado's application. Accordingly, the judgment of the district court is vacated and the case remanded to the district court with directions to enter an order remanding to the Secretary for further proceedings consistent with this opinion. Vacated and remanded. _______ ________ -10-